UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Cause No. 2:22-CR-065-PPS-JEM |
| TYWOUN DESHAWN NIXON, ) | |
| Defendant. ) | |

## OPINION AND ORDER

On July 20, 2022, Defendant Tywoun Nixon was indicted on a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [DE 1.] As explained in greater detail below, Nixon was not presented for an initial appearance in this case until over a year later, on August 22, 2023. [DE 12.] Based on this lengthy period of delay, Nixon has filed a Motion to Dismiss the Indictment [DE 9], asserting that he was held for an unreasonable amount of time without an arraignment, in violation of Rule 5 of the Federal Rules of Criminal Procedure and the Sixth Amendment.

I ordered the government to file a response and held a hearing on the motion. [DE 16; DE 20; DE 25.] At the hearing, I denied the motion with respect to Nixon's argument that the period of delay in this case violated his speedy trial rights under the Sixth Amendment. [DE 25.] However, I withheld ruling on whether the delay violated the Interstate Agreement on Detainers or Rule 5 of the Federal Rules of Criminal

Procedure. In short, neither the Interstate Agreement on Detainers nor Rule 5 form a basis for dismissal of the indictment in this case, so the motion will be denied.

## Background

Due to Mr. Nixon's repeated brushes with the law, the procedural history in this case is complicated. Here's what happened: on July 20, 2022, a federal grand jury returned an indictment charging Nixon with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), from the period "on or about July of 2021, and continuing to on or about October 14, 2021." [DE 1 at 1.] Previously, in October 2021, Nixon was also charged in Lake Superior Court with being a felon carrying a handgun, battery with bodily injury to a public safety officer, resisting law enforcement, and criminal mischief. [DE 16-2.] *See* Lake County, Indiana, Cause No. 45G03-2110-F5-000503 (the "'503 case").

Nixon had his initial hearing in the '503 case on October 18, 2021, at which time the state court set bail at $50,000. [DE 16-2 at 2.] That was later reduced to $25,000/$2,500 in cash. *Id.* It appears that Nixon was able to post bail on these charges on November 9, 2021 (per the state court docket, a "surety bond entered in the clerk's office"). *Id.* The case remained pending in state court for several months. Then, on September 20, 2022, a motion to dismiss was filed, and the court subsequently granted the motion, noting that Nixon was being charged on parallel charges in a new federal case (*i.e.*, this case). *Id.* at 4.

Also back in 2021, a probable cause affidavit was filed in a separate state case charging Nixon with disorderly conduct. [DE 16-3.] *See* Lake County, Indiana, Cause No. 45H03-2107-CM-000433 (the "'433 case"). A bench warrant was issued on August 23, 2021. Nixon appeared in custody on the charges on October 28, 2021. [DE 16-3 at 1.] Nixon on November 6, 2021 posted a $1,500 cash bond. *Id.* The '433 case was resolved via a deferred prosecution agreement in March 2022. *Id.* at 2.

In April 2022, presumably while he was out of custody after posting bond in the '503 case, Nixon was charged on unrelated state charges of intimidation with a deadly weapon, criminal recklessness with a deadly weapon, and pointing a firearm at another person. He was booked into the Lake County Jail on those charges. [DE 16-1 at 1.] *See* Lake County, Indiana, Cause No. 45G03-2204-F5-00206 (the "'206 case"). A week after the federal indictment was returned in this case, on July 27, 2022, Nixon was arrested in the '206 case and never made bail. [DE 16-1 at 2.] He remained in custody during the pendency of the '206 case.

Nixon has filed an affidavit explaining that while his family could have paid to bond him out, "doing so would have been financially devastating" for him and his family if he was not also able to obtain or afford pretrial release in this case. [DE 9-3.] Bonding out of the state court case, only to learn that bond in the federal case was prohibitively high or that he was not eligible for pretrial release, would have presented a financial hardship to Nixon, his partner, and his newborn child. In that scenario, he

3

would still have been unable to work to provide for himself and his family through the pendency of the federal case, despite having posted bail in the state proceeding.

In May 2023, Nixon filed a motion to change his plea to guilty on the three counts of criminal recklessness in the '206 case. The state court accepted his guilty plea and the matter proceeded to sentencing. [DE 16-1 at 5–6.] On June 27, 2023, Nixon was sentenced to a term of two years' imprisonment on each of the charges, to all run concurrently, and granted 670 days' credit for the time he had already spent in jail. [DE 16-1 at 6–7. *See also* DE 9-1 (sentencing order).] This meant that Nixon was eligible for release on the charges in the '206 case on July 27, 2023. *See* Ind. Code § 35-50-6 *et seq.*

The parties agree that the same day the indictment was returned in this case, a federal "hold" was placed on Nixon, precluding his release from state custody. This "hold" does not appear in the state court record in the '206 case. The government states that the fact that a hold was placed on Nixon is based on information "gleaned from the Lake County Jail Records Department," following a conversation between the government's counsel and the Department on August 22, 2023. [DE 16 at 1 n.1.] Whenever it was entered, the fact remains that Nixon's term of incarceration on the charges in the '206 case was set to expire no later than July 27, 2023. At the time he filed his motion to dismiss, on August 16, 2023, he remained in custody at the Lake County Jail. Only after he filed his motion did the government seek to bring him before a magistrate in this case – twenty-six days after his term of incarceration in the '206 case had expired. [DE 11; DE 12.]

Adding to this context, Nixon represents that his attorney reached out to the prosecution with a request that he be transferred for arraignment in October 2022. [DE 9-2.] The record before me is ambiguous on whether Nixon specifically requested a transfer from state custody for his arraignment. *See id.* That said, the email thread Nixon has submitted in support of his motion clearly implies a discussion between his counsel and the government on transferring him to federal custody – again, all the way back in October 2022. *Id.* The government does not directly address this in its response brief, instead asserting that during the almost thirteen-month period between his arrest in the '206 case and his initial appearance in federal court on August 22, 2023, Nixon "remained in state custody" and never provided "written notice of a 'request for a final disposition' of the indictment," as required by Article III of the Interstate Agreement on Detainers. [DE 16 at 2.]

## Discussion

As can be seen from the above recitation, the facts of this case are pretty dense. But taking a step back, they can be boiled down to the following: A defendant is indicted for a federal crime and a warrant is issued for his arrest. A week later, prior to the execution of the federal warrant, he is arrested on unrelated state charges. While he is being held in custody in a local jail on those unrelated state charges, an administrative hold is placed on his release, due to the indictment in the federal case. The defendant later pleads guilty to the state charges, the state court imposes a sentence, and the defendant serves it. However, after he's served the duration of the

5

sentence imposed by the state court, the defendant is stuck – he's still held in the local jail pursuant to the administrative hold. He remains there for an additional twenty-six days, prior to his presentment for an initial appearance in federal court. Does the delay in presenting the defendant for his initial appearance require dismissal of the indictment?

Nixon asserts that he was held in custody for an unreasonable amount of time without an arraignment and seeks dismissal of the indictment pursuant to Rule 5 of the Federal Rules of Criminal Procedure and the Sixth Amendment. [DE 9.] As I noted above, at the hearing on the motion, I denied his request for relief under the Sixth Amendment. [DE 25.] So, Nixon's motion hinges on whether the delay in this case runs afoul of Rule 5 or some other basis in law. In that vein, I also instructed the government to submit briefing on whether the delay in this case runs afoul of the Interstate Agreement on Detainers, which applies in this case because it has been adopted in Indiana and the United States. [DE 10.] *See* 18 U.S.C. app. § 2; Ind. Code § 35-33-10-4.

## I. The Interstate Agreement on Detainers, 18 U.S.C. app. § 2

Let's start with the Interstate Agreement on Detainers. Upon receiving Nixon's motion to dismiss (which did not raise the IAD as a basis for relief), I was initially concerned that the situation he outlined may have violated its anti-shuttling provisions. After reviewing the relevant law on point, I find that Nixon's rights were not violated under the IAD.

The IAD, as its name suggests, is an agreement between various jurisdictions that applies to the transfers of sentenced prisoners. *Schreiber v. Columbia Cnty., WI*, 2003 WL 23211629, at *3 (W.D. Wis. May 8, 2003) (citing *Carchman v. Nash*, 473 U.S. 716, 719 (1985)). "The Act allows prisoners to demand the speedy disposition of charges pending against them in other jurisdictions, and serves 'to prevent prosecutorial abuses of the detainer that potentially allow a prisoner to languish in a separate jurisdiction under the constant but uncertain threat of further prosecution.'" *United States v. Donaldson*, 978 F.2d 381, 390 (7th Cir. 1992) (quoting *United States v. Kurt*, 945 F.2d 248, 251 (9th Cir. 1991)). Its animating purpose is "to encourage the expeditious and orderly disposition" of charges against a prisoner that span multiple jurisdictions, in order to reduce the period of uncertainty concerning the total length of the prisoner's sentence. *See* 18 U.S.C. app. § 2, art. I. The Supreme Court has explained that, in recommending the adoption of the IAD, the Council of State Governments noted that prison administrators were often "thwarted in [their] effort[s] toward rehabilitation [because t]he inmate who has a detainer against him [in an other jurisdiction] is filled with anxiety and apprehension and frequently does not respond to a training program," and, concomitantly, "the prisoner was often deprived of the ability to take advantage of many of the prison's programs aimed at rehabilitation, merely because there was a detainer lodged against him." *United States v. Mauro*, 436 U.S. 340, 359 (1978).

Under the IAD, when a state (including the United States) has pending charges against an individual who is already incarcerated in another state, the state with

7

pending charges ("the receiving state") may file a request with the state where the accused is presently incarcerated ("the sending state") to hold the accused for the receiving state or to notify it when the accused's release is imminent. *See* 18 U.S.C. app. § 2, art. II(b); *New York v. Hill*, 528 U.S. 110, 111 (2000). This request is called a "detainer." After a detainer is filed, the IAD requires the defendant's custodian (here, the warden at Lake County Jail) to "promptly inform the prisoner of the source and contents of any detainer lodged" against him and to "inform the prisoner of the prisoner's right to make a request for final disposition of the indictment . . . on which the detainer is based." 18 U.S.C. app. § 2, art. II(c). "Once the receiving state commences criminal proceedings [under Article II], the Agreement affords the prisoner certain protections." *United States v. Roy*, 830 F.2d 628, 632 (7th Cir. 1987) (quoting *United States v. Roy*, 771 F.2d 54, 55 (2d Cir. 1985)).

Under Article III(a), the speedy trial provision, a prisoner covered by the IAD must "be brought to trial within 180 days of when he has 'caused' the appropriate officials to have notice of his speedy trial request." *Roy*, 830 F.2d at 633. Article IV(e), the "anti-shuttling provision," permits the prosecuting authority of a signatory state in which an untried indictment, information, or complaint is pending to obtain temporary custody of a prisoner against whom it has lodged a detainer by filing a "written request" for custody with the incarcerating state. 18 U.S.C. app. § 2, art. IV(e); *Alabama v. Bozeman*, 533 U.S. 146, 150 (2001); *Webb v. Keohane*, 804 F.2d 413, 414 (7th Cir. 1986); *United States v. Gouse*, 950 F. Supp. 2d 355, 359 (D.R.I. 2013), *aff'd*, 798 F.3d 39 (1st Cir.

8

2015). Article IV states that a trial must be had "prior to the prisoner's being returned to the original place of imprisonment," or else the charges will be dismissed with prejudice. *Bozeman*, 533 U.S. at 150 (quoting 18 U.S.C. app. § 2, art. IV(e)).

In *Roy*, the Seventh Circuit started its analysis by evaluating when the IAD applied to the defendant. It reasoned that pretrial detainees are not serving terms of imprisonment within the meaning of the IAD, and therefore the agreement became applicable to the defendant when his parole was revoked and he "became a prisoner serving a state sentence." 830 F.2d at 633. *Accord United States v. Reed*, 620 F.2d 709, 711 (9th Cir. 1980) (defendant not serving "term of imprisonment" within meaning of IAD while in custody awaiting trial on state and federal charges and awaiting revocation of his parole arising out of an earlier state charge); *United States v. Jones*, 341 Fed. App'x 275 (9th Cir. 2009). When the defendant's "sentence expired, . . . the IAD no longer applied." *Roy*, 830 F.2d at 633. The defendant argued that the IAD continued to apply to him after the expiration of his state sentence, because a federal detainer had been filed against him and remained on file. *Id.* at 633 n.3. The court disagreed, noting that the IAD's speedy trial provision expressly applied "*during the continuance of the term of imprisonment*," and thus any period after the expiration of the defendant's term of imprisonment expired "could not have been during the term of his state imprisonment." *Id.* (quoting 18 U.S.C. App. III § 2, art. III(a)).

Thus, Nixon runs into a threshold issue: up until June 27, 2023, he was not serving a term of imprisonment under the IAD. His term of imprisonment expired July

9

27, 2023, along with his state court sentence, and after that point "the IAD no longer applied." 830 F.3d at 633. In light of this, I fail to see how this case fits into the IAD's anti-shuttling or speedy trial provisions.

Article IV(e) is designed to prevent a defendant from being sent back and forth between federal and state prison in a manner that undermines one of the core purposes of incarceration: prisoner rehabilitation. There is no suggestion that Nixon was improperly shuttled back and forth between state prison and federal custody while awaiting the disposition of his cases. Much the opposite – he complains that he was held in Lake County Jail after his sentence expired (and the IAD no longer applied) and was never transferred to federal custody during his term of imprisonment on the state charges.

In addition, the facts of this case do not fit into the IAD's speedy trial provision. Article III(c) requires a custodian to "promptly" inform Nixon of the "source and contents" of a detainer and his "right to make a request for final disposition of the indictment . . . on which the detainer is based." If a receiving state chooses to accept custody of a prisoner in another jurisdiction, under Article III(a) it has 180 days to bring the prisoner to trial after the prisoner "ha[s] caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment[.]" Even if the IAD applied following expiration of Nixon's sentence on July 27, 2023, nothing in the record of this case supports the conclusion that Nixon effected a

written notice of his place of imprisonment and request for a final disposition to be made of the indictment – until he filed his motion to dismiss on August 16, 2023. [DE 9.] His initial appearance was held six days later.

In sum, because Nixon's rights under the IAD were not violated, I decline to dismiss the indictment on this basis.

## II.     Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure

Rule 5(a)(1)(A) requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Rule 5(a) does not require dismissal of the indictment in this case, for several reasons.

The government asserts that the period of delay in this case was practically nonexistent, insofar as Nixon was arrested on the federal warrant and brought before a magistrate the same day. [DE 16 at 4–5.] Nixon claims that he was under federal arrest from the time his state sentence expired, "if not earlier," because of the hold placed on him at Lake County Jail following the filing of the federal indictment. [DE 20 at 1.] The government correctly notes that Rule 5(a) only applies "after the defendant has been arrested for a *federal* crime," and a defendant is "'arrested' on the federal charges when the warrant [is] executed, not when it was issued." *United States v. Stork*, 487 F. App'x 295, 297 (7th Cir. 2012) (citing *United States v. Alvarez–Sanchez*, 511 U.S. 350, 358 (1994)). The record reflects that the federal arrest warrant was executed August 22, the same day as Nixon's initial appearance.

Nixon does not really respond to this argument, but he asserts a novel theory

11

that state officials acted as agents of the federal government by holding him in jail after he was due to be released. [DE 20 at 2–3.] I have not found any cases adopting this view in an analogous circumstance. Moreover, as noted above, the record is at best ambiguous as to whether Nixon was being detained by state officials "at the behest of" the federal government. *See United States v. Broadhead*, 413 F.2d 1351, 1358 (7th Cir. 1969) (taking care to clarify that Rule 5 "is only Federal in nature," and does not apply to states "simply because [an] arrest . . . was executed by local police"). In sum, because Nixon was held in state custody for all if not the vast majority of the period of delay, his rights were not violated under Rule 5(a).

More fundamentally, Nixon asserts that dismissal is an available remedy where there is an unnecessary delay in bringing a defendant to trial, citing Rule 48 of the Federal Rules of Criminal Procedure. [DE 9.] While the parties have not submitted briefing on this issue, multiple courts in this circuit, including our sister court in the Southern District of Indiana, have looked askance at the proposition that dismissal of the indictment is an appropriate remedy for violations of Rule 5. *See United States v. Castillo*, 2020 WL 6743283, at *2 (S.D. Ind. Nov. 17, 2020); *United States v. Taylor*, 2010 WL 1849922, at *2 (E.D. Wis. May 7, 2010), *report and recommendation adopted*, 2010 WL 2425922 (E.D. Wis. June 11, 2010). In both of these cases, the government conceded that a Rule 5(a) violation had occurred, but asserted that dismissal of the indictment, as opposed to suppression of evidence or relief through some other mechanism, was not the proper remedy.

12

In *Taylor*, twenty-six days passed between the defendant's arrest on a federal warrant and his arraignment before a magistrate judge (the same period of delay that elapsed between the end of Nixon's state court sentence and his presentment at an initial appearance in this case). 2010 WL 1849922, at *2. The district court, adopting a thorough report and recommendation from the magistrate assigned to the case, concluded that dismissal of the indictment was not a proper sanction under Rule 5(a) and declined to use its supervisory powers to dismiss the indictment in the case, given there was no evidence that anybody "acted intentionally or willfully in denying [the defendant] access to the court," and the defendant identify any "specific prejudice to his ability to defend the case based on the delay." 2010 WL 2425922, at *2. The court's analysis in *Taylor* also noted that, while the month-long delay was "most regrettable," it was entirely possible that "Taylor has a monetary remedy available to him under 42 U.S.C. § 1983, or some other statute, for his alleged 'wrongful detention.'" 2010 WL 1849922, at *2. But to the extent the delay was caused by an "unintentional human error," dismissal of the indictment would "be an inappropriate step to take under either Rule 5(a) or [the] court's supervisory authority." *Id.*

*Castillo*, a more recent case which involved a *115-day delay* prior to the defendant's initial appearance, took on similar arguments. The court cut to the chase: the defendant identified "no authority from any court of appeals or any court in the Seventh Circuit showing that dismissal is an appropriate remedy for Rule 5(a) violations." 2020 WL 6743283, at *1. The two authorities the court identified that had

13

dismissed an indictment for a Rule 5(a) violation appear to be outliers. One was a much older case that cited no "case law supporting dismissal, rather than suppression of evidence, for flagrant violations of Rule 5(a)." *Id.* (citing *United States v. Osunde*, 638 F. Supp. 171, 176 (N.D. Cal. 1986)). The other had not been applied in the Seventh Circuit and also concluded that the Speedy Trial Act was violated, triggering a "mandatory dismissal" under 18 U.S.C. § 3162(a)(1). *Id.* (citing *United States v. Contreras*, 197 F. Supp. 2d 1173, 1177–78 (N.D. Iowa 2002)). All of this suggests that even if I did conclude that Rule 5(a) was violated by the delay in this case, the relief Nixon seeks is limited to the suppression of evidence obtained during prearraignment delay, credit to his sentence, or possibly a monetary remedy under 42 U.S.C. § 1983. But those are questions for another day.

\*    \*    \*

Apart from the delay in his release after the expiration of his state court sentence, Nixon faced a dilemma. He could have bonded out of the state court case, as the government notes. Doing so would have prompted the government to take him into custody on the federal charge. But he did not want to do that without knowing whether he would be eligible for pretrial release in this case, and if so, what bond he may be required to pay. He represents, and I accept, that it would have presented acute financial hardship to him, his partner, and his newborn child if he had posted bond in the state case and was ineligible for or unable to afford pretrial release in this case, because he would still be unable to work until this case was resolved and his sentence,

14

if any, served. But that is really beside the point. This situation is not unique; the pressure Nixon faced is not uncommon in matters involving parallel criminal proceedings in multiple jurisdictions. Because an individual is arraigned separately in each case, it is not possible to ascertain with certainty whether an individual subject to charges in multiple jurisdictions will ultimately be allowed to be released pending their resolution.

I am sympathetic to the fact that Nixon was held in jail following the expiration of his sentence, and that he was only released, arrested on the federal charge, and brought before a federal magistrate after his counsel filed a motion to dismiss the case. As noted above, it is possible that Nixon's detention in Lake County Jail violated his rights under 42 U.S.C. § 1983, which imposes liability on persons who, under color of state law, deprive others of rights "secured by the Constitution and laws" of the United States. *See, e.g.*, Taylor, 2010 WL 1849922, at *3. But that issue is not before me. And regardless, the delay in this case did not violate Nixon's under Rule 5(a) or the Interstate Agreement on Detainers. Accordingly, his Motion to Dismiss [DE 9] is **DENIED**.

**SO ORDERED**.

ENTERED: January 22, 2024.

                                              /s/ Philip P. Simon
                                              PHILIP P. SIMON, JUDGE
                                              UNITED STATES DISTRICT COURT